UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Charles E. McInnis, | ) | Civil Action No.:_____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| Equifax Information Services, LLC, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

1.    This is an action brought by Plaintiff, Charles E. McInnis, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2.    The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.    The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4.    Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5.      To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6.      One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

2

**JURISDICTION AND VENUE**

8.    This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

9.    Venue is proper in the Florence Division because the Plaintiff resides in Marlboro County, and the Defendant transacted business in this division.

**PARTIES**

10.    Plaintiff, Charles E. McInnis, is a resident and citizen of the State of South Carolina, Marlboro County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

11.    Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.  At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

12.    Defendant Equifax is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

13.    Defendant disburses such consumer reports to third parties under contract for monetary compensation.

14.    Defendant's acts and omissions alleged herein are in violation of the Fair Credit

3

Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

15.    The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, failed to reinvestigate Plaintiff's disputes, and failed to block fraudulent information from Plaintiff's credit report after receipt of a police report.    Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to be denied credit and subjected to further damages as set forth herein.

## FACTUAL ALLEGATIONS

16.    In December 2025, Plaintiff was sued by Midland Credit Management, debt collector, for two consumer credit card accounts that did not belong to him.

17.    After being served with the lawsuit, Plaintiff went online to check his credit reports and discovered he was the victim of identity theft.

18.    On or about December 9, 2025, Plaintiff obtained a copy of his Equifax credit report. In reviewing his credit report, Plaintiff discovered that numerous fraudulent accounts had been opened in his name without his knowledge.    Additionally, other information was reporting on his credit report that did not belong to him.

19.    On or about December 10, 2025, Plaintiff sent a dispute letter to Defendant stating he had been the victim of identity theft and, upon reviewing his credit report, discovered multiple fraudulent accounts and other information reporting that was incorrect.

Specifically, Plaintiff disputed the following accounts as fraudulent: American Credit Acceptance, Acct. No. *1001; Cavalry Portfolio Services, Acct. No. *8452; LVNV Funding LLC, Acct. No. *4289; Midland Credit Management, Acct. No. *5693; Midland Credit Management, Acct. No. *8936; Portfolio Recovery Assoc., Acct. No. *9706; and Capital One Bank USA NA, Acct. No. *9402, (hereinafter collectively referred to as the "Accounts"). In addition, Plaintiff disputed hard inquires for Capital One and THD/CBNA as he had not applied for credit with either entity. Plaintiff also disputed five (5) addresses at which he had never lived. Finally, Plaintiff requested Defendant add a fraud alert to his credit file to help prevent any future fraudulent accounts from being opened. With his letter, Plaintiff provided Defendant his full Social Security number, date of birth, and correct address.

20.    Defendant received Plaintiff's dispute on December 16, 2025.

21.    Defendant did no investigation of Plaintiff's December 10, 2025, dispute.

22.    On or about December 19, 2025, Defendant sent Plaintiff a letter stating it had received Plaintiff's request to add an initial one-year fraud alert to his credit file, however Defendant needed documentation to verify Plaintiff's identity and address. Defendant requested Plaintiff send a letter including his name, address, and date of birth, and include two documents verifying his identity.

23.    On or about February 4, 2026, Plaintiff responded to Defendant's letter by providing Defendant with a copy of his driver's license, Social Security card, and his December 10, 2025, dispute letter.

24.    Thereafter, Defendant received Plaintiff's letter and identification verifying

documents on or about February 7, 2026.

25.     On or about February 12, 2026, Defendant sent Plaintiff a form letter stating the information Plaintiff provided as proof of his identity did not match the information they had on his credit file.  Defendant requested Plaintiff send two items of documentation verifying his identity and address.

26.     On that same day, Defendant sent Plaintiff a second form letter stating they had received his dispute concerning LVNV Funding LLC, Acct. *4289 and American Credit Acceptance, Acct. *1001.  However, because Defendant's records showed Plaintiff had already disputed the items at least twice (2) in the last 90 days and the information was verified as accurate, Defendant considered Plaintiff's dispute frivolous and refused to investigate.

27.     Plaintiff never received any investigation results from Defendant showing Defendant had ever investigated his December 2025 or February 2026 disputes, and that LVNV Funding LLC and/or American Credit Acceptance had verified their reporting of the accounts as accurate.

28.     On or about April 1, 2026, Plaintiff sent Defendant another dispute letter.  In his letter, Plaintiff again informed Defendant he had been the victim of identity theft and that he had previously sent proof of his identity to Defendant, but Defendant continually asked for proof of same.  Plaintiff again disputed the Accounts as fraudulent accounts, opened in his name without his knowledge or permission. Plaintiff also again disputed hard inquiries for Capital One and THD/CBNA, and five (5) addresses at which he never lived. With his letter, Plaintiff provided a copy of the police report he filed regarding the fraud, a copy of

the dismissal of the lawsuit filed by Midland Credit Management showing the accounts were not his, and a copy of his Social Security card and driver's license.

29.    Defendant received Plaintiff's second dispute on April 4, 2026.

30.    Defendant did no investigation of Plaintiff's April 1, 2026, dispute.

31.    On or about April 8, 2026, Defendant sent Plaintiff the same form letter stating it had received Plaintiff's request to add an initial one-year fraud alert to his credit file, however, Defendant needed information to verify Plaintiff's identity and address. Defendant requested Plaintiff send a letter including his name, addresses, and date of birth, and include documentation verifying his identity.  At the time Defendant sent this letter it had already received Plaintiff's identification documents on two prior occasions.

32.    On that same day, Defendant sent a second letter to Plaintiff stating it had received Plaintiff's request to block information from his credit file, however Defendant refused to do so.  Defendant informed Plaintiff that in order for it to block information under Section 605B of the FCRA, Plaintiff needed to provide proof of his identity, the specific information which was the result of the identity theft, and a copy of his Identity Theft Report with the Federal Trade Commission or a police report regarding the identity theft. At the time Defendant sent this letter to Plaintiff, it had already received all of these items from Plaintiff at least twice and still refused to block the fraudulent accounts and information from Plaintiff's credit report.

33.    On April 23, 2026, Defendant sent Plaintiff a letter including a copy of "Remedying the Effects of Identity Theft" prepared by the Consumer Financial Protection Bureau (CFPB).

34.    On May 15, 2026, Plaintiff attempted to obtain a copy of his Equifax credit report through www.annualcreditreport.com.  Unfortunately, as Plaintiff's information did not match that reporting on his Equifax credit report, his request was denied.  Thereafter, Plaintiff sent a third dispute letter to Defendant wherein he again disputed all six (6) of the Accounts as fraudulent.  Plaintiff also disputed five (5) addresses at which he has never lived, and two hard inquiries.  With his letter, Plaintiff again provided a copy of the police report he filed regarding the identity theft, a copy of the dismissal of the lawsuit with prejudice filed by Midland Credit Management showing the accounts were not his, and a copy of his Social Security card and driver's license.

35.    On May 21, 2026, Defendant sent Plaintiff the same form letters it had sent him on April 8, 2026.  The first requested proof of his identity and the second refused to block the fraudulent Accounts from Plaintiff's credit report.

36.    At the time Defendant sent the May 21, 2026, letters, it had already received all of the information necessary to confirm Plaintiff's identity and to block the fraudulent accounts from Plaintiff's credit file.

37.    Defendant never investigated any of the Plaintiff's disputes.

38.    Defendant never blocked the fraudulent accounts and addresses from appearing on Plaintiff's credit reports.

39.    Defendant never provided Plaintiff with a copy of his credit report verifying that a fraud alert had in fact been added to his credit report.

40.    Defendant never provided Plaintiff with any reinvestigation results or dispute results.

41.    To date, Defendant continues to wrongfully refuse to block the fraudulent Accounts

from Plaintiff's Equifax credit file.  Accordingly, each of those fraudulent Accounts continues to be reported on Plaintiff's credit report as a derogatory account belonging to Plaintiff.

42.     To date, Defendant continues to report the fraudulent hard inquires for Capital One and THD/CBNA on Plaintiff's Equifax credit file.

43.     To date, Defendant continues to report inaccurate and misleading information as belonging to Plaintiff, including five addresses at which Plaintiff has never resided.

44.     Defendant continues to allow disputed entities to pull and/or view Plaintiff's credit report.

45.     Defendant repeatedly failed to make a reasonable reinvestigation into Plaintiff's disputes.

46.     If Defendant forwarded an ACDV to any of the furnishers of the disputed Accounts, upon receipt of the ACDV response from the furnisher of the disputed Account information, Defendant simply accepted the furnisher's verification of the Account and did not undertake to perform any reinvestigation of its own.

47.     For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information.  The CRA must make some independent investigation of its own.  "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016

9

WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

48.     If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

49.     Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

50.     While Defendant has refused to block the fraudulent Accounts from Plaintiff's credit report and continued to report false, fraudulent, and inaccurate information on Plaintiff's credit reports, those credit reports have been viewed by multiple third parties resulting in on going harm to Plaintiff.

<u>**COUNT ONE**</u>
(Fair Credit Reporting Act)

51.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 50 hereinbefore as if fully set forth herein.

52.     Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA,

15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

53.    Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

54.    As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to fix his Equifax credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out-of-pocket expenses.

55.    Plaintiff is entitled to actual damages in an amount to be determined by the jury.

56.    In addition, the Plaintiff has incurred litigation expenses and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

57.    Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681o(a)(2).

### COUNT TWO
(Fair Credit Reporting Act)

58.    The Plaintiff adopts the averments and allegations of paragraphs 15 through 57 hereinbefore as if fully set forth herein.

59.    Defendant willfully failed to comply with the requirements imposed under the

FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

60.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

61.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

62.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to fix his Equifax credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out-of-pocket expenses.

63.     Plaintiff is entitled to actual damages in an amount to be determined by the jury.

64.     In addition, the Plaintiff has incurred litigation expenses, and attorney's' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

65.     Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

66.     Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681n(a).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against

Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.    For this trial to be heard by a jury; and

E.    For such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed.  ID No.  10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

## PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
100 Coastal Drive, Suite 210
Charleston, SC 29492